Pages 1 - 28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

IN RE ROUNDUP LIABILITY          )
LITIGATION,                      )          NO. 16-MD-02741-VC
_____)
                                 )
DOLORES RAMIREZ, ET AL.,         )
                                 )
          Plaintiffs,            )
                                 )
   VS.                           )          NO. 19-CV-02224-VC
                                 )
MONSANTO COMPANY,                )
                                 )
          Defendant.             )
_____)
                                 )
AARON SHELLER, ET AL.,           )
                                 )
          Plaintiffs,            )
                                 )
   VS.                           )          NO. 19-CV-07972-VC
                                 )
BAYER AG, ET AL.,                )
                                 )
          Defendants.            )
_____)
                                 )
JONAS PEREZ-HERNANDEZ, ET        )
AL.,                             )
                                 )
          Plaintiffs,            )
                                 )
   VS.                           )          NO. 24-CV-01736-VC
                                 )
BAYER AKTIENGESELLSCHAFT, ET     )
AL.,                             )
                                 )
          Defendants.            )
_____)
                                            San Francisco, California
                                            Thursday, September 19, 2024

**TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs:

        WAGSTAFF LAW FIRM, PC
        940 N. Lincoln Street
        Denver, CO 80203
BY:  **AIMEE H. WAGSTAFF, ATTORNEY AT LAW**

        WEITZ AND LUXENBERG, P.C.
        700 Broadway
        New York, NY 10003
BY:  **ROBIN L. GREENWALD, ATTORNEY AT LAW**

        RUEB STOLLER DANIEL LLP
        9696 Culver Boulevard, Suite 301
        Culver City, CA 90232
BY:  **BEHRAM V. PAREKH, ATTORNEY AT LAW**

        AUDET AND PARTNERS
        711 Van Ness Avenue, Suite 500
        San Francisco, CA 94102-3229
BY:  **WILLIAM M. AUDET, ATTORNEY AT LAW**
      **MARK E. BURTON, JR., ATTORNEY AT LAW**

        FEGAN SCOTT LLC
        150 S. Wacker Drive, 24th Floor
        Chicago, IL 60606
BY:  **ELIZABETH A. FEGAN, ATTORNEY AT LAW**

        THORNTON LAW FIRM LLP
        2121 Avenue of the Stars, Suite 800
        Los Angeles, CA 90067
BY:  **DAVID BRICKER, ATTORNEY AT LAW**

        THORNTON LAW FIRM LLP
        One Lincoln Street, 25th Floor
        100 Summer Street
        Boston, MA 02111
BY:  **EVAN R. HOFFMAN, ATTORNEY AT LAW**

        JOSEPH SAVERI LAW FIRM, LLP
        601 California Street, Suite 1505
        San Francisco, CA 94108
BY:  **JOSEPH R. SAVERI, ATTORNEY AT LAW**
      **ITAK MORADI, ATTORNEY AT LAW**

      **(APPEARANCES CONTINUED ON THE NEXT PAGE.)**

**APPEARANCES (Continued):**

                      ROBERT LIEFF LAW OFFICES
                      2925 Sycamore Canyon Road
                      Santa Barbara, CA 93108-2024
              BY:  **ROBERT L. LIEFF, ATTORNEY AT LAW**

For Defendants:

                      WINSTON & STRAWN LLP
                      1901 L Street, NW
                      Washington, DC 20036
              BY:  **JOHN J. ROSENTHAL, ATTORNEY AT LAW**

                      WINSTON & STRAWN LLP
                      300 South Tryon Street, 16th Floor
                      Charlotte, NC 28202
              BY:  **JEFFREY S. WILKERSON, ATTORNEY AT LAW**

                      SHOOK, HARDY AND BACON L.L.P.
                      2555 Grand Boulevard
                      Kansas City, MO 64108
              BY:  **ANTHONY R. MARTINEZ, ATTORNEY AT LAW**

REPORTED REMOTELY BY:  Kendra A. Steppler, RPR, CRR
                       Official United States Reporter

```
 1   Thursday - September 19, 2024                    2:02 p.m.

 2                      P R O C E E D I N G S

 3                          ---oOo---

 4        THE COURTROOM DEPUTY:  Now calling Civil Cases

 5   16-MD-2741, In Re Roundup Products Liability Litigation; and

 6   19-2224, Ramirez v. Monsanto Company; and 19-7972, Sheller v.

 7   Bayer, et al.; and 24-1736, Perez-Hernandez, et al. v. Bayer.

 8        Will counsel please state your appearances for the record,

 9   starting with the plaintiff.

10        MR. AUDET:  William Audet for Plaintiff Ramirez.

11        THE COURT:  Hi.

12        MS. FEGAN:  Good afternoon, Your Honor.  Elizabeth

13   Fegan on behalf of Plaintiff Sheller.

14        THE COURT:  Hi.

15        MR. BURTON:  Mark Burton --

16        MR. BRICKER:  Good afternoon, Your Honor.  David

17   Bricker for the Perez-Hernandez plaintiffs.

18        THE COURT:  Hi.

19        MR. BURTON:  Good afternoon.  Mark Burton on behalf of

20   Ramirez, as well.

21        MR. LIEFF:  Robert Lieff, Your Honor, on behalf of

22   Perez.

23        MR. SAVERI:  Good afternoon, Your Honor.  Joseph

24   Saveri on behalf of Perez-Hernandez.

25        MS. WAGSTAFF:  Good afternoon, Your Honor.  Aimee
```

```
1    Wagstaff on behalf of the MDL Leadership.

2            MS. GREENWALD:  Good afternoon, Your Honor.  Robin

3    Greenwald, also on behalf of Leadership.

4            THE COURT:  Hi.

5            MR. PAREKH:  Good afternoon, Your Honor.  Behram

6    Parekh on behalf of plaintiff.

7            MS. MORADI:  Hi, Your Honor.  Itak Moradi for the

8    Perez-Hernandez plaintiffs.

9            MR. HOFFMAN:  Good afternoon, Your Honor.  Evan

10   Hoffman also for the plaintiffs.

11           THE COURT:  All right.  It looks like that might be it

12   for the plaintiffs' side.

13           MR. ROSENTHAL:  Good morning, Your Honor.  John

14   Rosenthal for Monsanto.  I'm joined by Jeff Wilkerson and

15   Anthony Martinez.

16           THE COURT:  Hi.

17        Okay.  I'm sort of a little bit confused as to how to

18   handle these cases.  We have the one case -- is it

19   Perez-Hernandez? -- where we already have a motion to dismiss

20   filed by Monsanto.  Maybe I'll talk -- I'll start with you,

21   Mr. Rosenthal, since you're the lawyer in all three cases.

22           MR. ROSENTHAL:  Yes, Your Honor.

23        That -- there's a motion to dismiss pending.  The response

24   is due November 12th.  The reply is due December 12th.  And

25   it's set for a hearing, currently, on January 8th.
```

1      **THE COURT:**  Is there -- I was just curious, is there

2  any reason why you all set such an elongated briefing schedule

3  for this?

4      **MR. ROSENTHAL:**  It -- really just a question of all

5  the other things going on, on both sides.

6      **THE COURT:**  Okay.  And I was -- I was curious why we

7  have a motion to dismiss in one of these cases, but not the

8  other two.  I mean, you know, the issues overlap substantially.

9  For a bit, I was thinking, well, should these cases be

10 consolidated?  But I think maybe after looking at it more

11 closely, they -- maybe they shouldn't be consolidated, because,

12 you know, they're -- I think there's one that's like a

13 California only --

14     **MR. ROSENTHAL:**  Yes, Your Honor.  Our position is they

15 shouldn't.  Ramirez and Sheller were filed some time ago.

16 Perez is more recent.  The nature of the cases are different,

17 even though all three are seeking medical monitoring at some

18 level.

19     **THE COURT:**  Okay.  Can you all hear me?  I think I'm

20 cutting -- I may be cutting in and out.  Can you hear me okay?

21     **MR. ROSENTHAL:**  Yes, Your Honor.

22     **MR. SAVERI:**  Your Honor, we can hear you fine.  Thank

23 you.

24     **THE COURT:**  So you and I were talking at the same

25 time.  I think there was a glitch in the Zoom system.  So let

1    me -- Mr. Rosenthal, let me -- let me start again.

2        I was -- I was thinking about -- I was originally thinking

3    about consolidating the cases.  But I think we have -- we have

4    one case where it's a California class only.  I think the other

5    two are proposed nationwide classes.  And then one of the cases

6    there's -- it's not just a proposed futures class.  There's

7    also an individual plaintiff who has been diagnosed with NHL.

8    And that plaintiff is proposing to represent some other class

9    of people, like people who have NHL and believe they got it

10   from Roundup but haven't contacted lawyers yet, or something

11   like that.  Did I -- did I describe, accurately, the

12   difference --

13           MR. ROSENTHAL:  Yes.

14           THE COURT:  -- among the three cases?

15           MR. ROSENTHAL:  Your Honor, with some minor

16   modifications, yes, that's essentially correct.  Ramirez is the

17   first one that filed -- the broadest -- it's both damages and

18   class.

19           THE COURT:  That's the one that was originally filed

20   by the Cabraser firm, and the motion for preliminary approval

21   was filed at the same time as the complaint?

22           MR. ROSENTHAL:  Yes.

23           MR. AUDET:  Your Honor, if I might, this is William

24   Audet.  I'm the Ramirez plaintiff's counsel.

25        No, my firm filed this case, originally, with Robert

1  Lieff, not the Lieff Cabraser firm.  The Lieff Cabraser firm

2  joined the case as part of a settlement effort.  If Your Honor

3  will recall, there were two efforts in the Ramirez case for a

4  nationwide settlement that didn't make it past the preliminary

5  approval stage.

6         **THE COURT:**  So that's the -- okay.  That's the Ramirez

7  case.

8         **MR. AUDET:**  Yes, correct.  And --

9         **THE COURT:**  That's the one that was filed first.

10        **MR. AUDET:**  Yes.

11        **THE COURT:**  And then there is the -- there is

12 Mr. Saveri's case, which we had an extensive discussion

13 about -- back before -- back when it was originally filed and

14 before it got transferred to CD Cal -- and that's the

15 Perez-Hernandez case; right?

16        **MR. ROSENTHAL:**  Yes.

17        **MR. SAVERI:**  Your Honor, Joseph Saveri.

18     That's -- that's correct.  I'm glad you're smiling about

19 our last conversation about this case.  But, yes.

20        **THE COURT:**  And then the Fegan case is the most

21 recently filed one?

22        **MS. FEGAN:**  No.  Actually, the Sheller --

23        **MR. ROSENTHAL:**  No, Your Honor.

24        **MS. FEGAN:**  The Sheller case was filed second.  We had

25 joined with the Ramirez case in the settlement efforts.

1          **THE COURT:**  Okay.

2          **MS. FEGAN:**  Once those fell apart, our cases split.

3  We -- our case is for a 17-state medical monitoring class.

4          **THE COURT:**  Okay.

5          **MS. FEGAN:**  And, in our case, Monsanto has already

6  filed an answer.

7          **THE COURT:**  Has filed an answer?

8          **MS. FEGAN:**  Yes.

9          **THE COURT:**  Okay.

10         **MR. AUDET:**  And -- and that is true with the Ramirez

11  case.  There's an answer filed.  Once we did the third-amended

12  complaint -- there was a motion to dismiss.  We basically --

13  your order -- Your Honor issued an order, and we basically then

14  did a stipulated filing and dealt with everything in the

15  answer.  That was about a year and a half ago.  So --

16         **THE COURT:**  Okay.  But I'm -- so -- all right.  So it

17  seems like probably, given the differences among the three

18  cases, it doesn't make sense to consolidate them, even though

19  they are all three kind of these class -- proposed class

20  actions -- future class actions, we'll call them.

21     But I think it probably does -- well, what I was going to

22  say, before you told me that Monsanto had filed answers in two

23  of them, was that it would make sense to -- I was sort of

24  assuming there would be motions to dismiss in all three of

25  them.  And I was going to say that it would make sense to

1  adjudicate those motions to dismiss all at the same time,

2  because the issues are going to be overlapping substantially.

3      So in the -- so let me make sure I have this straight.  So

4  in Ramirez and Sheller, answers had been filed.  And in

5  Perez-Hernandez, a motion to dismiss has been filed and maybe

6  also a motion to strike the class allegations; is that right?

7      **MR. ROSENTHAL:**  For the second round, we have not

8  filed a motion to strike the class allegations at this time.

9  There is a briefing schedule for the motion to dismiss.

10     **THE COURT:**  Okay.  I guess, maybe the first question I

11 should ask you is, why didn't you file a motion to strike the

12 class allegations?

13     **MR. ROSENTHAL:**  That's a good question.  This is a

14 much narrower class rather than what previously was said

15 before.  So the decision was we didn't believe it was ripe at

16 that time.

17     **THE COURT:**  Okay.  And the motion to dismiss that you

18 filed in Perez-Hernandez that -- what do you -- I think I

19 glanced at it.  I think -- I think that I saw that you were

20 arguing that there was no standing; right?

21     **MR. ROSENTHAL:**  Yes, Your Honor.

22     **THE COURT:**  Is that right?  What else -- what else are

23 you arguing in the motion to dismiss?

24     **MR. ROSENTHAL:**  We're also arguing specific

25 deficiencies in the substantive allegations as well as they've

1  got a claim there at the end for a broad declaratory judgment

2  claim that we don't think, procedurally, is appropriately a

3  separate claim.

4          THE COURT:  Okay.  And then why didn't you file a

5  motion to dismiss, at least for lack of standing, in the other

6  cases?

7          MR. ROSENTHAL:  I'm not sure, Your Honor.  I believe

8  there was a motion to dismiss filed in Sheller.  And I believe

9  the medical monitoring allegation was eventually dismissed by

10  the Court.  Sheller --

11          THE COURT:  By -- the medical monitoring claim

12  dismissed by me?

13          MR. ROSENTHAL:  By you.

14          MS. FEGAN:  No.

15          MR. ROSENTHAL:  But, substantively, in terms --

16          THE COURT:  I didn't --

17          MR. ROSENTHAL:  -- of the third-amended complaint --

18          THE COURT:  I didn't dismiss any -- I'm pretty sure I

19  would have remembered if I would have -- if I dismissed a

20  medical monitoring claim.

21          MR. ROSENTHAL:  Well --

22          MS. FEGAN:  In Sheller --

23          MR. ROSENTHAL:  -- as a -- as a substantive complaint,

24  Your Honor, it was dismissed.

25          MS. FEGAN:  Sheller only has claims for medical

```
 1  monitoring.  It only has a single count for negligence seeking
 2  medical monitoring relief.  The answer was filed before it was
 3  transferred into the MDL.  It was filed when the case was
 4  pending in the Southern District of Indiana in 2020.  No motion
 5  to dismiss was ever filed in Sheller.
 6       MR. ROSENTHAL:  I apologize.  I misspoke.  I meant the
 7  Ramirez case.
 8       THE COURT:  Okay.  But I didn't dismiss any medical
 9  monitoring claim in Ramirez either, I don't think.
10       MR. AUDET:  Your Honor, if I may.  William Audet.  You
11  dismissed --
12       THE COURT:  Can somebody on the defense side who kind
13  of is familiar with all three of these cases and what's
14  happened in them -- who can -- who can talk to me about what's
15  going on and why Monsanto is and is not doing what it's doing?
16     Mr. Martinez?
17       MR. ROSENTHAL:  Your Honor, that's me.  Historically,
18  these cases got filed early on.  And they were transferred into
19  the MDL Ramirez --
20       THE COURT:  Okay.  But we're having a case management
21  conference on these three cases.  And I expect the lawyers to
22  be familiar with what has happened in these three cases and
23  have ideas for how to manage these three cases.  And it seems
24  like you're not really familiar with the cases.
25       MR. ROSENTHAL:  Your Honor, I am familiar with the
```

1  three cases.  So we --

2         **THE COURT:**  Okay.

3         **MR. ROSENTHAL:**  -- have three class cases, and we

4  think they are distinct cases.

5         **THE COURT:**  Okay.  Why didn't you file a motion to

6  dismiss for lack of standing in the other two cases?

7      Wouldn't the argument -- wouldn't the argument for no

8  standing in Perez-Hernandez apply equally to the -- at least to

9  the plaintiffs who have not contracted NHL in the other two

10  cases?

11         **MR. ROSENTHAL:**  We believe it would.  And that was one

12  issue we wanted to discuss with you today, which is pursuant to

13  your rules -- your standing rules -- and your rules,

14  particularly paragraph 50, whether or not it would be

15  appropriate to take up that issue either in the form of a

16  12(b)(1) motion or a Rule -- summary judgment motion.

17  Obviously, we would need discovery on that issue, but --

18         **THE COURT:**  What's paragraph 50?

19         **MR. ROSENTHAL:**  Paragraph 50 of your standing rules.

20         **THE COURT:**  (Indiscernible.)

21         **MR. ROSENTHAL:**  It urges the parties to consider, in

22  the context of class cases, whether there are substantive

23  motions that might take larger issues off the table.

24         **THE COURT:**  So, I guess, my -- if you -- if there is

25  no standing -- and if standing hasn't adequately been alleged,

1   and if the plaintiff doesn't have standing, you file a -- you

2   file a Rule 12(b)(1) motion to dismiss for lack of standing.

3   And I'm asking you why you haven't done that.  You've done that

4   in the Perez-Hernandez case.  It seems like the same issues are

5   presented by the other two cases.  Why haven't you filed a

6   12(b)(1) motion in those other two cases?

7          MR. ROSENTHAL:  The cases were -- Your Honor, I don't

8   know why, at that time, they were not.  I think it may be the

9   combination of the fact that those cases -- earlier cases --

10  were being considered as a vehicle for the settlements.  But

11  answers were filed in one case and in the other case --

12         THE COURT:  Okay.  But Monsanto takes the -- let me

13  just make sure I understand.  From glancing at the motion to

14  dismiss in Perez-Hernandez, Monsanto takes the position that a

15  person who has not been diagnosed with NHL does not have

16  standing to sue Monsanto based on an allegation that Roundup

17  causes NHL.  That's -- that's your position; right?

18         MR. ROSENTHAL:  Yes, Your Honor.

19         THE COURT:  Okay.  So -- and if you're correct on

20  that, I have no jurisdiction over the Perez-Hernandez case;

21  right?

22         MR. ROSENTHAL:  Correct, Your Honor.

23         THE COURT:  If you're correct on that, I also have no

24  jurisdiction over the Ramirez case or the Sheller case, except

25  to the extent that there might be a plaintiff in one of those

1    cases that is -- does have NHL and is alleging that Roundup

2    caused their NHL.

3        **MR. ROSENTHAL:**  Correct, Your Honor.

4        **THE COURT:**  Okay.  So at least as it relates to

5    standing, we need to be adjudicating the standing issue for all

6    three cases at the same time.  And of course I have my own

7    obligation to investigate whether I have jurisdiction.  So

8    we're -- even though Monsanto has not filed a motion to dismiss

9    on standing grounds in the other two cases, I'm now issuing an

10   order to show cause.  The other two cases should not be

11   dismissed for lack of standing.

12        The response to the order -- we can talk for a minute

13   about -- we can talk a little bit later about whether any other

14   issues should be adjudicated at the front end.  But the

15   response to the order to show cause for Ramirez and Sheller

16   will be due on the same day that the opposition is due in

17   Perez-Hernandez.  And Monsanto can file one -- you know -- one

18   reply that will apply to all three cases.  Because I don't

19   think that the issues -- the standing issues -- will be any

20   different in any of the three cases.

21        **MR. ROSENTHAL:**  Your Honor, I raised the issue of

22   whether or not -- we're fine to do that.  We do think that

23   issue ought to be litigated first, because it has the potential

24   to eliminate all three cases.

25        **THE COURT:**  Well, I don't think that's correct.  I

1    mean, I don't think it would eliminate the Ramirez case,

2    because there's one plaintiff in the Ramirez case who has NHL

3    and claims that it was caused by Roundup; right?

4            MR. ROSENTHAL:  I -- you are correct, Your Honor.  I

5    misspoke as to Ramirez.  But it would eliminate the medical

6    monitoring issues across all three cases and the injunctive

7    relief request.

8        I do raise an issue of whether or not we need discovery

9    and expert reports on these issues.  I surmise that the

10   plaintiffs are going to come back and, you know, under the

11   Potter test, argue certain things and point to certain studies,

12   which they say will support the factors, and they may even

13   submit expert declarations and whether or not --

14           THE COURT:  Well, that raises the question of

15   whether -- of what your -- the nature of your standing

16   challenge; right?  Is it a -- what the Ninth Circuit has called

17   a "facial standing challenge," which means that you're -- you

18   know -- you're claiming that the plaintiffs have failed to

19   allege that they have standing?  Or is it a factual standing

20   challenge, meaning that as a matter of -- as an evidentiary

21   matter -- you can show that the plaintiffs don't have standing?

22           MR. ROSENTHAL:  At this point --

23           THE COURT:  Or the plaintiffs can't show, as an

24   evidentiary matter, that they have standing.

25           MR. ROSENTHAL:  At this point, we've raised the facial

1    matter.  I'm raising the issue of whether or not we ought to

2    address the substantive issue and proceed with discovery on

3    that issue and try and resolve those as opposed to just

4    resolving it from a facial issue.

5              **THE COURT:**  Okay.  But, I mean -- I guess, what --

6    what factual development would be needed to -- I mean, again,

7    the -- what's -- what's undisputed is that the plaintiffs don't

8    have NHL; right?  They've alleged -- a number of them have

9    alleged that they've had significant exposure to Roundup.  And

10   I'm -- I think that we probably can all take that as a given;

11   right?  I mean, I'm -- I'm assuming we can take that as a

12   given.

13        I guess, my question is, you know, assuming significant

14   exposure to Roundup, assuming that they don't have NHL, and

15   even assuming sort of the -- that the studies most favorable to

16   the plaintiffs are correct -- you know, and we all know there

17   are very serious questions about those studies -- but even

18   assuming that the studies most favorable to the plaintiffs are

19   correct, what percentage increase is there in the chances of

20   them getting NHL?

21        Like, I'm guessing.  I don't remember.  I looked at this

22   back when, you know, Mr. Saveri was in court talking to me

23   about the Perez-Hernandez case.  But I think it probably goes

24   up from like -- you know -- you have a .1 percent chance to a

25   .2 percent chance, or something like that, of getting NHL.  So

1  the question is whether, under those circumstances -- even

2  assuming the studies that are most favorable to the plaintiffs

3  are true, and even assuming that the plaintiffs have had the

4  heavy exposure to Roundup that they've alleged -- do they have

5  standing or is the -- is -- have they suffered an actual or

6  imminent injury or one that is conjectural and hypothetical?

7        MR. ROSENTHAL:  Well, Your Honor --

8        THE COURT:  I mean, what -- so what discovery -- I

9  guess I'm saying, what discovery would need to be done?

10        MR. ROSENTHAL:  Well, Your Honor, we don't know what

11  they're going to argue precisely now.  We don't know what

12  studies they're going to rely upon or how they're going to try

13  and articulate those studies.  We don't think the evidence is

14  available.  And even though the Perez plaintiffs have tried to

15  at least put forth allegations in their complaint of at least

16  two studies they reference, we're not even sure which studies

17  they are.  So perhaps a facial attack is appropriate right now.

18  It depends on what they're going to come back with.

19        THE COURT:  You froze for a bit, Mr. Rosenthal.  So I

20  didn't -- you said we're not sure which studies they even are

21  that the Perez-Hernandez plaintiffs are citing in their

22  complaint.  But -- and then I didn't hear anything you said

23  after that.

24        MR. ROSENTHAL:  Correct, Your Honor.  So we're not

25  sure what they're going to come back with.  We don't believe

1    the studies that they -- that there are studies that are going

2    to support their position.  So perhaps a facial attack is

3    appropriate right now and we can get it resolved then.  But if

4    they're going to come back with additional studies and

5    information, we may need discovery on that issue.  And it would

6    certainly go to the injury and redressability factors.  But --

7          THE COURT:  But, I mean, all of the discovery we've

8    done -- I mean, I'm just trying to figure out what discovery

9    you would need.  I mean, we have this MDL where we've had a

10   gazillion Daubert hearings, and we've looked at all the

11   studies, and there's been a gazillion depositions taken of a

12   gazillion experts on the question of whether Roundup is capable

13   of causing cancer and whether it's caused cancer in particular

14   individuals.

15         And, you know, we have -- we all know the studies.  And we

16   all -- you know -- the -- there are some studies that are

17   favorable to the plaintiffs.  And I think that even those

18   studies just suggest that, you know, it's a -- the -- somebody

19   who's exposed to Roundup still has a really small chance of

20   contracting NHL.  I think even the studies that are most

21   favorable to the plaintiffs say that.  So I just -- I'm not

22   clear what discovery you're anticipating occurring that hasn't

23   already been done in the MDL.

24         MR. ROSENTHAL:  Well, Your Honor, for example, they --

25   they reference a new study related to a mosaic Y chromosome in

1   the -- Perez.  That issue really has not come up before in the

2   litigation.  Nobody has really opined on that.  We don't

3   believe that study facially gets them there.  I'm not sure what

4   they're going to come forward with.  And, again, we're fine to

5   see what they have and what they're going to put up, but we'd

6   like to get this issue resolved.

7          **THE COURT:**  The first question is whether they've

8   adequately alleged standing in the complaints; right?  So I

9   gather what you're saying is that what you've done is you've

10  filed a motion to dismiss on the ground that they haven't

11  adequately alleged standing.

12         **MR. ROSENTHAL:**  Yes.

13         **THE COURT:**  Okay.

14     All right.  Ms. Wagstaff, Mr. Parekh -- the Leadership

15  counsel has been sitting there quietly.  What -- do you all

16  have anything that you want to say about this?

17         **MS. WAGSTAFF:**  I'm not sure I want to get in the hot

18  seat.  Other than the fact that our studies prove that exposure

19  to Roundup causes NHL, I have nothing else I would like to say.

20         **THE COURT:**  You don't want to talk about how much more

21  likely someone is to get NHL if they've been exposed to Roundup

22  compared to somebody who hasn't been exposed to Roundup?

23         **MS. WAGSTAFF:**  Not at this moment.

24         **THE COURT:**  Uh-huh.

25         **MS. WAGSTAFF:**  We've had a lot of discussions about

1   that, Your Honor.  And we've heard very -- we've heard what the

2   jury decided back in 2018.  So we'll leave it at that.

3        **THE COURT:**  Well, I mean, for you, it doesn't matter

4   how much more likely somebody --

5        **MS. GREENWALD:**  Right.

6        **THE COURT:**  -- is to get NHL.  It matters whether the

7   jury believes that it's -- that a person's cancer was caused by

8   NHL.

9        **MS. GREENWALD:**  Right.

10       **THE COURT:**  I mean by Roundup.

11       Okay.  So I -- you know -- I'm a little -- I'm a little

12   bit confused about how to proceed.  I'm sensing that perhaps

13   I'm not the only one who's a little bit confused about how to

14   proceed.

15       You know, I think that -- I'm sort of thinking out loud

16   here.  But I wonder if -- to the extent that the question is

17   whether the plaintiffs have adequately alleged standing in

18   their complaints -- right -- that is something we can probably

19   decide, like, tomorrow; right?  That's not a -- that's not a

20   difficult -- I don't think that's a very difficult question.

21       To -- you know -- to the extent that, you know, it's a

22   factual standing challenge, meaning let's say the -- let's say

23   I were to conclude that the plaintiffs have adequately alleged

24   standing in their complaints -- right -- and then -- and let's

25   say Monsanto wanted to turn around and say, well, maybe they've

1    adequately alleged it, but they can't prove it.  And so we need

2    to have a factual standing challenge against all of these

3    plaintiffs.  Then we -- you know -- then that might be a more

4    complicated inquiry.  I don't know.

5         But I think that what -- but as I think anybody -- anybody

6    who watched the discussion I had with Mr. Saveri knows, I'm

7    very skeptical that the plaintiffs have standing in this case.

8    And so I guess I'm trying to figure out the most expeditious

9    way to get an answer to that question.  And I'm wondering if we

10   should set an accelerated schedule to adjudicate the question

11   of whether the three -- whether standing has been adequately

12   alleged in the three cases.  And then after -- you know -- and

13   then get a quick ruling on that.

14        And if the answer is no, then the cases are gone, except

15   for, you know, the plaintiff in Ramirez who has NHL.  And

16   that -- I assume that case can just be folded into -- folded

17   into the regular -- you know -- just put that case in line --

18   right -- with all the other cases.

19        And -- but -- and if I conclude that the plaintiffs have

20   adequately alleged standing, and if the defendant wants to

21   mount a factual challenge on standing, we can do that.  And we

22   can have a discussion about what that would entail and what

23   additional discovery, if any, would need to be done for that.

24   I'm sort of having a hard time imagining that the discovery

25   that we've already done in this MDL wouldn't suffice.

1        So how about that?  What if I issue an order to show cause

2   why the cases shouldn't be dismissed for lack of standing.  The

3   plaintiffs can respond in a couple weeks.  And the -- and then

4   Monsanto can reply in a couple weeks.  And then we'll have a

5   hearing on that issue, assuming a hearing is necessary.

6        **MR. ROSENTHAL:**  That is acceptable to Monsanto, Your

7   Honor.

8        **MR. AUDET:**  Your Honor --

9        **MR. ROSENTHAL:**  Do you want -- do you want us to work

10   together to propose a briefing schedule?  Or do you want to --

11        **THE COURT:**  No.  I mean, unless -- unless somebody

12   talks me out of that -- which, maybe they will, because, like I

13   said, I'm just thinking out loud -- but unless somebody talks

14   me out of that, we can just set a schedule right now.

15        **MR. AUDET:**  Happy to do that.

16        Your Honor, this is William Audet for the Ramirez

17   plaintiffs.

18        The only thing I would ask, procedurally, is that the

19   plaintiffs be allowed to respond in their individual case,

20   because we're not consolidated, although Monsanto may just have

21   one reply.  I'm okay -- that's between Your Honor and

22   defendants.  But I just want to make -- procedurally, I just

23   want to make sure it's okay that we do that on an individual

24   basis.  But, otherwise --

25        **THE COURT:**  That's fine.

1          **MR. AUDET:**  That's just a point, Your Honor --

2   procedural point.

3          **THE COURT:**  That's fine.

4          **MR. AUDET:**  Okay.  And then --

5          **THE COURT:**  Any other comments or questions or

6   concerns?

7          **MR. SAVERI:**  Sure.  This is Joseph Saveri.

8       So if we're going to do the facial standing issue first, I

9   understand that -- I assume, from the conversation, that the

10  operating assumption is that we would get an answer to that

11  before we address other issues, including other ones Monsanto

12  has raised regarding the sufficiency of the Perez-Hernandez

13  complaint.  So, you know, we --

14         **THE COURT:**  So, I mean, I think that -- I think that

15  the standing is -- it's a threshold issue.  And there are

16  serious questions about whether these plaintiffs have standing.

17  And so let's address that first.

18         **MR. SAVERI:**  Okay.  And then, Your Honor, just

19  scheduling, we did plan on having our opposition brief due the

20  middle of November.  I have planned around that.  I have a

21  number of depositions in a number of other cases, some of

22  which -- one of which you have.  So I -- I'd like to have at

23  least -- I'd like to have a reasonable amount of time, given

24  what we've previously scheduled, to file our brief on the

25  standing issue.

1          **THE COURT:**  The standing issue is a pretty

2     straightforward -- the question of whether standing has been

3     adequately alleged is a pretty straightforward issue.

4          **MR. SAVERI:**  I agree.

5          **THE COURT:**  And -- and so we're going to go ahead and

6     get that -- get that adjudicated promptly.

7          **MR. SAVERI:**  I have no objection to that.  I'm just --

8     I do have a lot of other things, and I'm just trying to sort

9     through my workload.  But fair enough, Your Honor.  I

10    understand where we're going.

11         **THE COURT:**  I understand.  And, you know, Mr. Saveri,

12    one answer to that might be to not be so good at going out and

13    getting big, high-profile cases, but be better at working on

14    those cases once you've filed them.  And that's a comment --

15    that's a comment that I'm directing to you regarding the *Kadrey*

16    *v. Meta* case that we'll be talking about tomorrow.

17         **MR. SAVERI:**  It -- Your Honor, I -- thank you for

18    that.  And we -- I don't want to mix up the cases.  I think --

19         **THE COURT:**  Yeah.  We'll talk -- we'll have plenty of

20    time to talk about that tomorrow.

21         **MR. SAVERI:**  Yeah.  And I --

22         **THE COURT:**  And I think that is -- if you're going

23    to -- if you're going to be filing these big, high-profile

24    cases, you have a responsibility to prosecute them and put the

25    resources into them and get the lawyer power on them that they

1   deserve.  And I'm not sure that's --

2          **MR. SAVERI:**  Absolutely, Your Honor.

3          **THE COURT:**  I'm not sure that is happening.

4          **MR. SAVERI:**  Absolutely, Your Honor.  And I -- when we

5   have the schedule, we plan around them.  And all I'm suggesting

6   is -- we have schedules in other cases.  We're ready to address

7   this issue as quickly as the -- everybody thinks is reasonable.

8          **THE COURT:**  Okay.  So we're going to -- the -- in all

9   three cases, the plaintiffs are ordered to show cause why the

10  case should not be dismissed for failure to adequately allege

11  standing.  The response to the order to show cause will be due

12  on October (indiscernible).  The -- Monsanto's reply will be

13  due on October 17th.  And we'll have a hearing on October 31st

14  at 10:00 a.m.

15         **MR. SAVERI:**  Your Honor, it's Joseph Saveri.  You

16  broke up at, from my perspective, the key moment.  When is my

17  brief due?

18         **THE COURT:**  Sorry about that.

19         **MR. SAVERI:**  I didn't want to miss it, Your Honor.

20         **THE COURT:**  My Internet connection is a little bit

21  sketchy today for some reason.

22      So the response to the order to show cause is due

23  October 4th.

24         **MR. SAVERI:**  Got it, Your Honor.

25         **THE COURT:**  And the --

1            **MR. SAVERI:**  Could you repeat the dates again?  I'm

2    sorry, Your Honor.

3            **THE COURT:**  The response to the order to show cause is

4    due October 4th.  Monsanto's reply is due October 17th.

5            **MR. SAVERI:**  Yep.

6            **THE COURT:**  And the hearing is October 31st at

7    10:00 a.m.

8        Actually, you know what we'll do -- there's so many

9    lawyers, and it is -- I think it is a relatively

10   straightforward issue.  So maybe we should do it by Zoom.  So

11   we'll do it at 2:00 by Zoom.

12       And the response to the order to show cause is limited to

13   ten pages each.  And Monsanto can file one -- one reply that is

14   15 pages.

15       And why don't we say that Monsanto's current motion to

16   dismiss is denied as moot.  And we'll -- you know -- to the

17   extent that you need to file a motion to dismiss in the future

18   in the Perez-Hernandez case, you can do that.

19       But, I mean, we can -- we can resolve this question -- and

20   I think the way we should handle these cases is that we resolve

21   the question of whether standing has been adequately alleged.

22   And if the plaintiffs have adequately alleged standing, then --

23   but if Monsanto wishes to launch a -- you know -- a facial --

24   sorry -- a factual challenge on standing -- and if I conclude

25   it makes sense to keep the cases on pause until we get that

```
 1   factual standing on challenging -- excuse me -- that factual
 2   challenge on standing resolved -- then we'll do that.  And we
 3   can have a discussion about what sort of discovery is needed
 4   and all of that, if any.
 5        All right.  So that's how we're going to handle these
 6   cases for now.  Obviously, no -- no discovery in these cases
 7   will happen until we resolve the order to show cause.  And is
 8   there anything else that we need to discuss here today?
 9            MR. ROSENTHAL:  Not from Monsanto's side.
10            THE COURT:  Okay.
11        Anything else from the plaintiffs?  It doesn't look it
12   like it.
13        Okay.
14            MR. SAVERI:  No.  Thank you, Your Honor.
15            THE COURT:  Thank you very much.
16            ALL:  Thank you, Your Honor.
17                (Proceedings adjourned at 2:37 p.m.)
18                         ---oOo---
19
20
21
22
23
24
25
```

<u>**CERTIFICATE OF REPORTER**</u>

     I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:    Tuesday, September 24, 2024


_____

Kendra A. Steppler, RPR, CRR

Official Reporter, U.S. District Court